**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-15-0000074**
**27-NOV-2015**
**08:30 AM**

NO. CAAP-15-0000074

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF ST

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 12-00021)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Ginoza, JJ.)

Mother-Appellant/Cross-Appellee (Mother) appeals and
Father-Appellee/Cross-Appellant (Father) cross-appeals from the
Family Court of the First Circuit's (Family Court) January 30,
2015 "Order Terminating Parental Rights."[1] The Family Court
awarded the Department of Human Services (DHS) permanent custody
of Mother and Father's minor child, ST.

On appeal, Mother argues that the Family Court abused
its discretion in terminating her parental rights after wrongly
concluding that Mother was unwilling and unable to provide a safe
home for ST within a reasonable amount of time. Mother contests
findings of fact (FOF) 38,[2] 48,[3] 49d,[4] and 53-56,[5] in the Family

---

[1]    The Honorable Steven M. Nakashima presided.

[2]    FOF 38 provides:

    38.    The Court rendered its oral decision on January 30,
        2015.

        a.    The Court found that DHS had shown by clear and
            convincing evidence that neither Mother nor
            Father were presently willing and able to
            provide a safe family home for [ST].

(continued...)

Court's April 20, 2015 "Supplemental Record on Appeal, Findings of Fact and Conclusions of Law" (FOF/COL). It is clear from her points of error that she also contests conclusions of law (COL) L1 and L2.[6]

---

[2](...continued)

    b.     The Court further found that it was not reasonably foreseeable that either Mother or Father would become able to provide [ST] with a safe family home within a reasonable period of time, even with a service plan.

[3]     FOF 48 provides:

    48.     The Court specifically found that for each Parent, this was a case of too little, too late as far [sic] their ability to demonstrate that they were willing and able to provide a safe family home for [ST].

[4]     FOF 49d provides in relevant part, "[T]he hoped for progress did not occur."

[5]     FOF 53-56 provide:

    53.     Under the circumstances presented by the instant cases, DHS has exerted reasonable and active efforts to avoid foster placement of [ST].

    54.     Under the circumstances presented by the instant cases, DHS has exerted reasonable and active efforts to reunify [ST] with Mother and Father, by identifying necessary, appropriate and reasonable services to address Mother and Father's identified safety issues (problems), and making appropriate and timely referrals for these services.

    55.     Each of the service plans offered by DHS and ordered by the court, were fair, appropriate, and comprehensive.

    56.     Under the circumstances presented in these cases, DHS treated Mother and Father fairly and serviced the entire family intensely since the start of the instant DHS and family court intervention with this family.

[6]     COLS L1 and L2 provide:

    1.     [ST's] legal mother and [ST's] legal father, adjudicated, presumed, or concerned natural father, as defined under [Hawaii Revised Statutes (HRS)] Chapter 578, are not presently willing and able to provide [ST] with a safe family home, even with the assistance of a service plan.

    2.     It is not reasonably foreseeable that [ST's] legal mother, legal father, adjudicated, presumed, or concerned natural father, as defined under HRS Chapter 578, will become willing and able to provide [ST] with a safe family home, even with the assistance of a service plan, within a reasonable period of time.

On cross-appeal, Father argues that the Family Court abused its discretion in terminating his parental rights based on a clearly erroneous conclusion that he was not willing and able to provide ST with a safe home even with the assistance of a service plan, and would not become willing and able to do so within the reasonably foreseeable future; and violated his due process and procedural rights by granting Guardian Ad Litem Sheri Ritter's (GAL Ritter) August 28, 2014 Motion for Immediate Review, seeking the Family Court's permission to allow ST's resource caregivers (Resource Caregivers) to relocate out-of-state with ST, without first conducting an Interstate Compact on Placement of Children (ICPC) home-study or holding a trial. Father contests FOF 50t[7] and COL L1, L2, M1, and M2.[8]

---

[7]     FOF 50t provides:

[50]t.    Based on the credible evidence, Father was given reasonable opportunities to effect positive changes to demonstrate that he could provide a safe family home for [ST]. However, it is clear to the Court that Father never reached the point where he could start unsupervised visits with [ST] and it is clear to the Court that Father is not currently willing and able to provide a safe family home for [ST]. Further, it is not reasonably foreseeable that Father will become willing and able to provide [ST] with a safe family home, even with the assistance of a service plan.

[8]     The contested COL provide:

L.     Parental Unfitness

1.     [ST's] legal mother and [ST's] legal father, adjudicated, presumed, or concerned natural father, as defined under HRS Chapter 578, are not presently willing and able to provide [ST] with a safe family home, even with the assistance of a service plan.

2.     It is not reasonably foreseeable that [ST's] legal mother, legal father, adjudicated, presumed, or concerned natural father, as defined under HRS Chapter 578, will become willing and able to provide [ST] with a safe family home, even with the assistance of a service plan, within a reasonable period of time.

M.     Permanent Plan

1.     Having made [COL] pertaining to "parental unfitness" pursuant to HRS § 587A-22(a)(1) and
(continued...)

3

I.

The Family Court did not err in terminating Mother's parental rights. See HRS § 587A-33 (Supp. 2014). Mother does not challenge the FOF that support the "ultimate determinations" set forth in the contested FOF and COL and, therefore, the uncontested findings are binding on this court and this court considers the ultimate determinations valid. See Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997). Regardless, FOF 38 and 48 are not clearly erroneous because they accurately reflect the Family Court's findings at the hearing on the Motion to Terminate Parental Rights, and FOF 49d and 53-56 and COL L1 and L2 are not clearly erroneous because they are supported by substantial evidence.

At trial, social worker Leimomi Brigoli (SW Brigoli) testified that Mother was unwilling and unable to provide ST with a safe family home, even with the assistance of a service plan, and she would not become able or willing to do so within the reasonably foreseeable future. Mother's participation in services was inconsistent and she did not demonstrate healthy coping skills or that she would avoid entering into abusive relationships and make ST a priority. Although SW Brigoli testified that Mother made progress in her therapy and GAL Ritter testified that Mother made tremendous progress in parenting, they both stated that Mother did not progress enough to support reunification.

It is clear from the record on appeal that DHS's decision to move for termination of parental rights was primarily based on Mother's failure to progress sufficiently in her services in the years prior to GAL Ritter's filing of the Motion for Immediate Review, on August 28, 2014, and not Mother's interactions with ST via Skype. Regardless, SW Brigoli testified

---

[8](...continued)

(2), the Court makes the following [COL] regarding the permanent plan (dated September 24, 2015) pursuant to HRS § 587A-33(a)(3).

2.  The Court hereby concludes that the Permanent Plan, dated September 24, 2014, is in the best interests of [ST].

that Mother failed to individualize Skype visits by making them at a time when she could focus exclusively on ST rather than whenever it was most convenient for her.

DHS gave Mother a reasonable opportunity to reunify with ST. Unless certain exceptions applied (which do not apply in this case) DHS was required, under HRS § 587A-31(g) (Supp. 2014), to move for termination of parental rights once ST had been in foster care for twelve consecutive months or an aggregate of fifteen out of the most recent twenty-two months from the date he entered foster care. DHS gave Mother more than two consecutive years from ST's entry into foster care to demonstrate that she could provide a safe family home.

II.

Father does not challenge the FOF which support the "ultimate determinations" set forth in the contested FOF and COL and, therefore, the uncontested findings are binding on this court, and this court considers the ultimate determinations valid. See Kawamata Farms, Inc., 86 Hawai'i at 252, 948 P.2d at 1093. Regardless, the Family Court did not err in terminating Father's parental rights, see HRS § 587A-33, and FOF 50t and COL L and M are not clearly erroneous.

At trial, SW Brigoli's testimony showed that DHS moved for permanency based on its assessments of Father, particularly his lack of progress in anger management and sex offender treatment, in the prior two years. SW Brigoli testified that Father was not offered more visits with ST due to Father's time constraints and scheduling conflicts. He was not offered unsupervised visits because he failed to progress in his anger management and sex abuse treatment. And he was not given the opportunity to participate in Mother's supervised visits because his aggressiveness made Resources Caregivers uncomfortable and he had intimidated ST's foster mother. Father's ability to interact with ST via Skype was not a significant factor in DHS's assessment.

Father's sex abuse treatment group therapist Raul Sabat (Sabat) testified that, throughout sex offender treatment, Father appeared angry and sometimes defensive or agitated. SW Brigoli

testified that Father did not take responsibility for DHS's involvement. Sabat also reported that Father resisted meaningful conversation and did not develop "insight" into himself or the ability to understand a situation from a variety of perspectives.

Sabat testified that Father denied that he was at risk of committing another sex offense, despite that a sex offender was always at risk of re-offending; he was unable to effectively cope with every day problems, such as financial struggles, which could trigger another sex offense; that although ST was younger than KV, and male, there was a risk that Father could sexually harm him as well, because in many cases an offender will victimize whoever is most accessible. SW Brigoli testified that Father could sexually harm ST because Father had not successfully completed his sex offender treatment and was unable to recognize what triggered his abuse of KV.

SW Brigoli testified that Father was unwilling and unable to provide ST with a safe family home, even with the assistance of a service plan, and he would not become able or willing to do so within the reasonably foreseeable future. Brenda Wong, Ph.D., an assistant director at the Kapiolani Child Protection Center, testified that the Multidisciplinary Team assigned to the case ultimately concluded that risk factors were still present and Father's lack of progress was not sufficient for reunification to occur. SW Brigoli testified that Father's mental health, domestic violence, and parenting issues were still a concern, and he refused to report to her as required.

DHS gave Father more than two consecutive years from ST's entry into foster care to demonstrate that he could provide a safe family home. See HRS § 587A-31(g).

Father has provided no authority to support his argument that the Family Court was required to hold a trial on GAL Ritter's August 28 2014 Motion for Immediate Review, and we find none. Further, Father does not argue that he was prejudiced by the Family Court's failure to hold a trial, except to say that his "constitutional and procedural right for a contested hearing" was violated, and he does not appear to have been prejudiced. Therefore, any error on the part of the Family Court in failing

to hold a trial on the Motion for Immediate Review was harmless. See <u>In re Doe</u>, 99 Hawai'i 522, 534 n.18, 57 P.3d 447, 459 n.18 (2002); Hawai'i Family Court Rules (HFCR) Rule 61.

Father has not demonstrated that he was prejudiced by DHS's alleged violation of the ICPC and, thus, any such error was harmless. See <u>In re Doe</u>, 99 Hawai'i at 534 n.18, 57 P.3d at 459 n.18; HFCR Rule 61.

### III.

Therefore, IT IS HEREBY ORDERED that the "Order Terminating Parental Rights," issued by the Family Court of the First Circuit, on January 30, 2015, is affirmed.

DATED: Honolulu, Hawai'i, November 27, 2015.

On the briefs:

Herbert Y. Hamada,
for Mother-Appellant/
Cross-Appellee.

Tae Chin Kim
for Father-Appellee/
Cross-Appellant.

Patrick A. Pascual,
Mary Anne Magnier, and
Jay K. Goss,
Deputy Attorneys General,
for Department of Human
Services-Appellee.

Presiding Judge

Associate Judge

Associate Judge

7